UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILL SAINTCLAIR PATTON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 4:05-cv-9 |
| | ) | |
| v. | ) | Honorable Wendell A. Miles |
| | ) | |
| MICHIGAN PAROLE BOARD et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that Petitioner fails to raise a meritorious federal claim.

**Discussion**

      I.      Factual allegations

Petitioner is currently incarcerated in the Florence Crane Correctional Facility. Petitioner pleaded guilty in the Oakland County Circuit Court to being a sexually delinquent person. On December 20, 2000, the trial court sentenced him to imprisonment of one day to life. Petitioner's application for habeas corpus relief concerns the denial of his parole by the Michigan Parole Board. Petitioner was most recently denied parole on August 24, 2004. Petitioner scored under the parole guidelines as having a high probability of parole. Pursuant to MICH. COMP. LAWS 791.233e(6), the parole board may depart from the parole guidelines by denying parole to a prisoner who scores as having a high probability of parole, but must provide a substantial and compelling reason for the departure.[1] The parole board gave the following substantial and compelling reason for departing from the guidelines: "Prisoner has a history of sexual deviancy and when given an opportunity on parole violated by engaging in assaultive behavior. PB not assured that P does not pose a risk. Departure is warranted."

Petitioner raises the following grounds for habeas corpus relief arising from the denial of his parole:

I.      DOES THE MANDATORY LANGUAGE USED IN MCL 791.233e et seq., IN CONNECTION WITH PAROLE DECISIONS BY THE MICHIGAN PAROLE BOARD, CREATE A PROTECTED LIBERTY INTEREST TO PAROLE?

---

[1] MICH. COMP. LAWS § 791.233e(6) provides in its entirety:

The parole board may depart form the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

    II.    DOES THE 1999 AMENDMENT OF MICHIGAN COMPLIED [SIC] 791.234 PURSUANT TO PUBLIC ACT #191 OF 1999 DENY PETITIONER EQUAL PROTECTION UNDER THE 14th AMENDMENT OF THE U.S. CONSTITUTION?

    III.    DOES THE RESPONDENTS [SIC] DENIAL OF PAROLE, IN PART, BASED UPON THE PETITIONERS [SIC] DISABILITY VIOLATE THE AMERICANS WITH DISABILITY [SIC] ACT (ADA) 42 USC 12131, et seq.?

    IV.    DO THE RESPONDENTS, THE MICHIGAN DEPARTMENT OF CORRECTIONS, [SIC] THEIR AGENTS CONSPIRE TO VIOLATE THE RIGHTS OF THE PETITIONER WHICH ARE SECURED BY THE U.S. CONSTITUTION, FEDERAL LAW OR TREATY?

    II.    <u>Exhaustion of state court remedies</u>

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Under recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(9) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* M.C.R. 7.104(D)(1), (2)(a).

Nevertheless, the Michigan courts have held that certain types of parole denial claims involving radical defects in legal process may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus. *See Morales v. Michigan Parole Board*, 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003), *lv. app. denied,* 682 N.W.2d 90 (Mich. 2004). The *Morales* court specifically recognized that challenges based on certain equal protection claims, among others, would be cognizable in state habeas corpus proceedings. *Id.* Arguably, Petitioner's equal protection challenge to the state statute and his claim under the ADA may be subject to challenge in a state habeas corpus action.

When it is uncertain whether the Michigan courts will consider the petitioner's habeas claims on the merits, this Court ordinarily will presume that such state relief is available to the

petitioner. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995); *Brewer v. Dahlberg*, 942 F.2d 328, 340 (6th Cir. 1991). The state courts should have a full and fair opportunity to cure any constitutional infirmities in petitioner's conviction. *See Brewer*, 942 F.2d at 340.

However, where a prisoner has failed to exhaust his available state-court remedies, this Court may nevertheless deny the petition on the merits. *See* 28 U.S.C. § 2254(b)(2). Because Petitioner's claims are without merit, the Court will dismiss the petition without the requirement of exhaustion.

   III.  Merits

     A.  **Due Process**

Petitioner contends that the mandatory language of MICH. COMP. LAWS § 791.233e(6) gives rise to a constitutionally protected liberty interest in parole for prisoners who score under the parole guidelines as having a high probability of parole. Contrary to his assertions, Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held

that the Michigan system does not create a liberty interest in parole. Subsequent to its 1995 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. April 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.* 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at

7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board.")  Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate.  The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165.  This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board.  In an unpublished decision, the Sixth Circuit has found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dahlman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest).  Because Petitioner has no liberty interest at stake, his due process claim must fail.

### B. **Equal Protection**

Petitioner contends that his Fourteenth Amendment right to equal protection of the laws has been violated  because  prosecutors and victims may appeal the grant of parole, while a prisoner has no right to appeal whatsoever.  As previously discussed, under recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, a prisoner no longer has an ability to appeal a parole denial under state law. *See* MICH. COMP. LAWS § 791.234(8); MICHIGAN COURT RULE 7.104(D)(1), (2)(a).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S.CONST., amend XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). In addition, prisoners are not a suspect class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class).

Thus, in order to establish an equal protection violation, Petitioner must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate legislative purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. Under this standard,

> the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637,

>   2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1, (1992). Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.

*Hadix*, 230 F.3d at 843.

### 1. Similarly situated

The similarly situated inquiry focuses on whether Petitioner is similarly situated to another group for purposes of the challenged government action. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *accord Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (equal protection requires "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged"). As stated by the First Circuit,

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

One could argue that inmates, prosecutors, and victims are "similarly situated" for purposes of this case because each may become an aggrieved party as a result of a decision–either favorable or unfavorable to parole–by the Michigan Parole Board. However, it is difficult to conceive of these parties as being similarly situated for purposes of a parole decision. A prisoner

who is denied parole may have his file reviewed again in the future. MICH. COMP. LAWS § 791.234(6)(a), (b). In contrast, allowing the prosecutor and victim to appeal a decision granting parole appears to be the only means by which the state can assure both the public and the victim an opportunity to challenge what they may believe is a wrong decision granting early release. In addition, because "the prison setting is *sui generis*," a legislature's choice "to treat prisoners differently than non-prisoners is plainly justified by the idiosyncratic characteristics of that setting." *Boivin v. Black*, 225 F.3d 36, 44 (1st Cir. 2000). "[P]risoners have substantial quantities of free time, have all their basic needs met, and are provided with free writing materials and often legal assistance." *Hadix*, 230 F.3d at 844. "[W]hat would normally be thought of as the burdens which attend litigation . . . carry few or no opportunity cost to prisoners." *Id*. For all these reasons, the Court concludes that prisoners are not similarly situated to prosecutors and victims.

### 2. Rational basis

Even if prisoners were deemed "similarly situated" to prosecutors and victims for purposes of a decision of the parole board, Petitioner's equal protection claim fails because the classification survives rational basis review. *See Wilson*, 148 F.3d at 604 ("differentiation between prisoners and non-prisoners . . . has a rational basis").

> [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). Where there are "plausible reasons" for the legislature's action, a court's inquiry is at an end; "[i]t is, of course, 'constitutionally

irrelevant whether this reasoning in fact underlay the legislative decision[.]'" *U.S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)).  In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts.  *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 178 Mich. App. 1, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted).  Protection of public safety is a stated purpose of Michigan's parole statutes.  *Hopkins v. Michigan Parole Board*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)).  Preventing the early release of potentially violent inmates is a legitimate governmental interest.  *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights). Finally, Michigan's parole statutes also include economic considerations, which are a legitimate government interest. *See Franciosi v. Michigan Parole Board*, 586 N.W.2d 542, 546 (Mich. Ct. App. 1998) (holding that MICH. COMP. LAWS §791.236(6), which prohibited attorneys from representing prisoners at parole release hearings, was rationally related to legitimate economic considerations), *aff'd*, 604 N.W.2d 675 (Mich. 2000).

The Michigan Court of Appeals squarely has considered whether the distinction drawn between prisoners and prosecutors and victims under MICH. COMP. LAWS § 791.234(9) is rationally related to a legitimate governmental interest. *See Morales*, 676 N.W.2d 221. The *Morales* court held that the Michigan legislature has a "legitimate interest in saving public funds in response to innumerable frivolous requests by incarcerated prisoners for the review of the Parole Board's denials of parole." *Id.* at 235. The court therefore concluded that the distinction drawn by the legislature did not implicate the Equal Protection Clause. *Id.* at 236.

Parole laws represent "the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society." *McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973). Allowing prisoners to be reviewed for parole at specified intervals, while prohibiting them from appealing adverse decisions, is a rational attempt to balance these concerns. The State of Michigan could rationally intend the limitation on appeal rights to provide a counter-balance to a prisoner's obvious but understandable incentive to litigate the issue of parole, as well as to protect the state treasury, from which funds will have to be expended in responding to appeals of parole denials. *See Hadix*, 230 F.3d at 845 (holding

that § 803(d)(3) of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3), did not violate plaintiff's equal protection rights). Similarly, it is not irrational "for the state to avoid the expense and inconvenience of formal, adversarial type parole hearings." *Johnson*, 110 F.3d at 307 n.11. Here, a tight fit exists between means and end, for prisoner appeals of parole denials are eliminated altogether. That other persons are permitted to appeal grants of parole does not detract from the rationality of the state's limitation. "The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner v. Jones*, 529 U.S. 244, 251 (2000). "'The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific.'" *McGinnis v. Royster*, 410 U.S. 263, 270 (1973) (quoting *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913)).

The Court agrees with the Michigan Court of Appeals in *Morales*, 676 N.W.2d at 235, that there exists a rational relationship to a legitimate state purpose in Michigan's legislative scheme prohibiting a prisoner from appealing a decision of the Michigan Parole Board to deny parole. *See also Jackson v. Jamrog*, No. 01-CV-73310-DT, 2002 WL 1879940, at **2-4 (E.D. Mich. July 26, 2002) (concluding that MICH. COMP. LAWS § 791.234(9) did not violate the equal protection clause both because prisoners were not similarly situated with prosecutors and victims and because the statute was rationally related to numerous legitimate state purposes). Accordingly, Petitioner's equal protection claim is without merit.

### C.     ADA

Petitioner claims that the Parole Board considered his diagnosis with exhibitionism and his history of drug addiction in denying parole in violation of Title II of the Americans with

Disabilities Act (ADA), 42 U.S.C. §§ 12131 and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a). Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. To make a prima facie case under Title II of the ADA, a plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *See Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

As the Sixth Circuit has recognized in an unpublished opinion, "[P]laintiff's alleged propensity for sexual misbehavior does not constitute a 'disability' within the meaning of the ADA. The ADA expressly states that 'disability' as defined within 42 U.S.C. § 12102(2) does not include 'sexual behavior disorders.'" *Hawkins v. Michigan Parole Board*, No. 98-1045, 1999 WL 506996 (6th Cir. June 10, 1999) (citing 42 U.S.C. 12211(b)(1)). In nearly identical language to the ADA, the RA expressly excludes from the protected class of persons those who suffer from "sexual behavior disorders." 29 U.S.C. 705(20)(F); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000) (holding that prisoner seeking participation in sexual offender treatment program is not protected by the RA due to statutory exclusion). Petitioner's exhibitionism is a sexual behavior disorder that does not constitute a disability for purposes of the ADA.

Even if Petitioner could show that he is handicapped within the meaning of the ADA and the RA, his complaint contains no allegations that the parole board discriminated against him solely because of his handicap. *See Lee v. Michigan Parole Board*, No. 03-1775, 2004 WL 1532563, at *1 (6th Cir. June 23, 2004). Moreover, neither the ADA nor the RA categorically bar a state parole board from considering an inmate's disability in making an individualized assessment of the future dangerousness of the inmate. *See Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002), *cert. denied*, 538 U.S. 921 (2003). A prisoner's disability that leads him to a propensity to commit crime is certainly relevant in determining whether he is qualified for parole. *Id.* The parole board did not make any reference whatsoever to Petitioner's history of drug use in its 2004 parole decision. Even if the parole board had considered Petitioner's use of drugs, it has a legitimate penological interest in considering a prisoner's history of drug use during an individualized assessment for parole suitability.

### D.    Conspiracy

In his final ground for habeas relief, Petitioner argues that Respondents have conspired to violate his rights under the Constitution and federal law, solely in order to retain prisoner counts and thereby justify the substantial budget of the Michigan Department of Corrections. Petitioner contends that the alleged conspiracy violates both 18 U.S.C. § 241 and 42 U.S.C. § 1985.

Petitioner's claim is completely without merit. First, 18 U.S.C. § 241 is a criminal statute providing no privately enforceable right that would entitle Petitioner to habeas or other relief. *See, e.g., United States v. Oguaju*, No. 02-2485, 2003 WL 21580657, at *2 (6th Cir. July 9, 2003) (holding that Plaintiff had no private right of action under 18 U.S.C. §§ 241 or 242 because they are criminal statutes) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.

1994)). *See also Peabody v. United States.*, 394 F.2d 175, 177 (9th Cir. 1968) (Section 241 is a criminal statute providing no basis for prisoner to obtain habeas relief); *Roberts v. Pepersack*, 256 F. Supp. 415 (D. Md. 1966) (Section is a criminal statute providing no private civil right of action for prisoner seeking to challenge terms of incarceration) (citing *Mattheis v. Hoyt*, 136 F. Supp. 119 (W.D. Mich. 1955)). The statute, therefore, fails to create a proper ground for habeas relief.

Second, 42 U.S.C. § 1985 provides, in relevant part, for an action to recover damages resulting from a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Petitioner is not seeking damages, but instead invokes the statute in his habeas action. The statute provides no remedy to a prisoner seeking to challenge the duration of his imprisonment. *See Gaito v. Ellenbogen*, 425 F.2d 845 (3d Cir. 1970).

Finally, even were § 1985 available to him as grounds for the grant of his habeas petition, Petitioner can point to no federal right of which the alleged conspiracy seeks to deprive him. The Court previously has rejected his claim under the ADA. Moreover, to the extent Petitioner suggests that the parole board's interest in justifying its funding violates his right to due process, Petitioner fails to identify a cognizable interest because he has no liberty interest in being released on parole. *See Sweeton*, 27 F.3d at 1164-65.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because he fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Commissioner of Correction of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the

court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated: <u>April 20, 2005</u>                                          <u>/s/ Wendell A. Miles</u>
                                                                                Wendell A. Miles
                                                                               Senior U.S. District Judge